IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Freeport Area School District       :
        :
        v.             :
        :
Freeport Education Association,     :
PSEA/NEA,            :   No. 1594 C.D. 2025
            Appellant   :   Argued: June 16, 2026

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE FIZZANO CANNON             FILED: July 16, 2026


Freeport Education Association, PSEA/NEA (Union), the collective bargaining representative for professional employees of Freeport Area School District (School District), appeals from an order filed November 4, 2025 by the Court of Common Pleas of Butler County (Common Pleas) that vacated an arbitration award entered in favor of the Union and against the School District. Upon review, we reverse Common Pleas' order and reinstate the arbitration award.

## I. Background

The facts in this case are undisputed and straightforward. The Union and the School District are parties to a collective bargaining agreement (CBA) effective July 1, 2021, through June 30, 2026. Reproduced Record (R.R.) at 66a. Article XIII.B.1 of the CBA governs long-term illness/disability leave and provides, in pertinent part:

> Any employee in the [School] District who is unable to teach because of personal illness or disability, as

evidenced by a physician's statement and who has exhausted all but three (3) days of sick leave and sabbatical leave, if available, shall be granted a leave of absence without pay for the duration of such illness or disability, up to one (1) year from the established date of the exhaustion (except for three (3) days) of the above described leaves.

. . . At the exhaustion of sick leave and sabbatical leave, if available, the employee has the option to assume payments for the benefits provided in the negotiated contract. Any employee opting to receive health care coverage from an alternate source will also have the option to take unpaid leave without using the leave provided under the Family and Medical Leave Act [(FMLA)[1]].

Employees who wish to use child rearing leave following the use of sick leave associated with child bearing may elect to request up to twelve (12) weeks of FMLA leave, inclusive of the period of disability. The FMLA leave that is beyond the employee's sick leave is uncompensated leave, except that the employee will continue to receive health care coverage for the duration of the FMLA leave. Unless the employee requests an additional child rearing leave under Board Policy 339.1, the employee would return to his or her position or an equivalent position at the conclusion of the FMLA leave. The FMLA regulations (29 CFR Section 825.602) provide different rules for FMLA leaves that commence or end near the end of a semester.

*Id.* at 80a. Section XXI.A, governing legality, provides: "The parties specifically agree that it is their intent that this Agreement, under all circumstances and in every respect, shall comply with all applicable statutes, governmental regulations and judicial decisions." *Id.* at 87a.

A Union bargaining unit member (Grievant) employed as a teacher by the School District was off work recovering from surgery for a period of time

---

[1] 29 U.S.C. §§ 2601-2654.

2

beginning in December 2023.  R.R. at 47a.  Although Grievant had accumulated sufficient paid leave to cover her time off, the School District unilaterally also applied the time off against her available leave under the FMLA.  *Id.*

The Union filed a grievance, asserting that the School District violated the CBA by denying Grievant the ability to choose whether or not to use FMLA leave time.  The arbitrator interpreted the CBA, including provisions of the FMLA incorporated therein.  R.R. at 48a.  The arbitrator concluded that the CBA gave Grievant the choice of whether to elect FMLA leave and that the School District could not do so unilaterally. *Id.* at 49a.  The arbitrator also pointed to the School District's FMLA policy (Policy 335); the arbitrator found that, under Policy 335, "FMLA leave begins with an employee request.  The designation of first an employee's request is depicted in both the Delegation of Responsibility and Guidelines portions of the Policy." *Id.* at 48a-49a.  The arbitrator determined that, under Policy 335, FMLA leave was a benefit to Grievant and was available upon request rather than unilaterally electable by the School District. *Id.* at 49a.

The School District filed an appeal with Common Pleas, which vacated the arbitration award.  Common Pleas posited that the arbitrator's award was contrary to the FMLA and its accompanying federal regulations.  The Union timely appealed Common Pleas' decision to this Court.

## II. Issue

On appeal before this Court, the Union asserts that Common Pleas erred by vacating the arbitration award based on the arbitrator's purportedly incorrect interpretation of the FMLA.  The Union maintains that review of the arbitrator's

3

award is limited to application of what is known as the "essence test" and that the arbitration award must be upheld because its essence was drawn from the CBA.

### III. Discussion

This Court has explained the "essence test" as follows:

> When reviewing an arbitrator's interpretation of a [CBA], the proper standard of review for an appellate court is the deferential essence test . . . . An exceptionally deferential standard is applied because binding arbitration is a highly favored method of dispute resolution . . . . The essence test is a two prong test under which an award should be upheld if (1) the issue as properly defined is within the terms of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. . . . An arbitrator's findings of fact are not reviewable by an appellate court, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation . . . . A reviewing court may only vacate an award when it is indisputably without foundation or fails to logically flow from the agreement . . . .
>
> [O]ur Supreme Court [has] noted that a reviewing court should not inquire into whether the [a]rbitrator's decision is reasonable or even manifestly unreasonable, but rather the question is whether the award may, in any way, be rationally derived from the agreement between the parties, viewed in light of its language, its context, and any other indicia of the parties' intention . . . .

*Tredyffrin/Easttown Sch. Dist. v. Tredyffrin/Easttown Educ., Ass'n*, 56 A.3d 17, 23 (Pa. Cmwlth. 2012) (first citing *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009); then citing *State Syst. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n*, 743 A.2d 405, 411 & 415 n.2 (Pa. 1999); then citing *Comty. Coll. of Beaver*

*Cnty. v. Cmty. Coll. of Beaver Cnty., Soc'y of the Faculty (PSEA/NEA)*, 375 A.2d 1267, 1275 (Pa. 1977)); and then citing *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969) (quotation marks omitted).

Where a grievance involves the application of statutory law to the terms of a CBA, our appellate courts have indicated that an arbitrator may interpret the statute in the course of analyzing the CBA. *See N. Star Sch. Dist. v. N. Star Educ. Ass'n*, 625 A.2d 159, 163-64 (Pa. Cmwlth. 1993) (explaining that where a CBA incorporated provisions of the Public School Code of 1949 (School Code),[2] an arbitrator "was free to examine" the CBA provision at issue "in accordance with" the related School Code provision); *accord Beaver Cnty.*, 375 A.2d at 1272 (observing that an arbitrator, in analyzing a CBA, "may, of course, look for guidance from many sources . . ."). In *North Star*, this Court also declined a request to "modify the 'essence test' so as to preclude an arbitrator from interpreting statutes incorporated into collective bargaining agreements[,]" finding resolution of that issue was not necessary to the disposition of the case. 625 A.2d at 164.

Relatedly, a number of this Court's decisions have suggested that judicial review of an arbitrator's statutory interpretation is limited to application of the essence test. *See Allegheny Valley Sch. Dist. v. Allegheny Valley Educ. Ass'n*, 528 A.2d 690, 693 (Pa. Cmwlth. 1987) (concluding an arbitrator's decision "that the discretion granted to a school district, through its directors, to pay compensation under [the School Code] may not be used to compel an employee to accept such compensation when that employee wishes to use accrued sick leave[]" drew its essence from the CBA and was a reasonable interpretation of the statutory provision); *Bristol Twp. Educ. Ass'n v. Bristol Twp. Sch. Dist.*, 460 A.2d 387, 388-

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

89 (Pa. Cmwtlh. 1983) (refusing judicial interference with an arbitration award that found a sabbatical right under the School Code was an employee benefit under the CBA, where the CBA specifically referred to the School Code); *Am. Fed'n of State, Cnty. & Mun. Emps. v. Reading*, 445 A.2d 570, 572 (Pa. Cmwlth. 1982) (concluding that an arbitrator's interpretation of a CBA as excluding the selection process for the city treasurer was not irrational "in the light of such indicia of the parties' intentions as" a relevant statutory provision and the absence of any relevant language in the CBA).

By contrast, in *Northumberland County Commissioners v. American Federation of State, County & Municipal Employees, AFL-CIO*, 71 A.3d 367 (Pa. Cmwlth. 2013) (*en banc*), this Court observed that, "[o]n review, we need not give deference to the [a]rbitrator's decision regarding the application of [a statutory provision to the CBA], because it specifically involves interpretation of a statute." *Id.* at 376 n.5 (citing *Wash. Cnty. v. Wash. Ct. Ass'n of Pro. Emps., AFL-CIO*, 948 A.2d 271, 276 (Pa. Cmwlth. 2008), *appeal denied*, 992 A.2d 890 (Pa. 2010)). However, that observation, relegated to a footnote, was arguably *dictum*, in that this Court ultimately agreed with the arbitrator's construction of the applicable statute and his application of that statute to the relevant CBA provision. *See id.* at 378.

This Court has acknowledged that "when the rights of the parties under the [CBA] are dependent upon the interpretation of a statute, [the arbitrator] must follow well established case law relating to that statute as laid down by the courts." *Greater Johnstown Area Voc.-Tech. Sch. v. Greater Johnstown Area Voc.-Tech. Educ. Ass'n*, 521 A.2d 965, 967 (Pa. Cmwlth. 1987); *see also id.* at 968 (explaining that an arbitrator is bound by "clear precedent" in construing a statute); *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 334 A.3d 16, 30 (Pa.

6

Cmwlth. 2025) (rejecting an argument that an arbitrator failed to follow well established case law, where the employer's brief failed to identify such well established case law[3]); *Greater Johnstown Sch. Dist. v. Greater Johnstown Educ. Ass'n*, 804 A.2d 680, 682 (Pa. Cmwlth. 2002) (explaining that "an arbitrator is not free to disregard established case law interpreting statutes when those same statutes must be interpreted as part of a collective bargaining agreement").

Analyzing these various judicial decisions as a whole, we conclude that an arbitrator may interpret a statutory provision that is implicated in a CBA. Judicial review of that interpretation is limited to application of the essence test unless the interpretation contradicts well established case law/clear precedent.

Here, Common Pleas concluded that the arbitrator interpreted the CBA and its incorporated provisions of the FMLA in a manner that violated the FMLA and its related regulations. However, unlike the statutory provisions at issue in the decisions cited above, the section of the FMLA at issue is not the subject of well established case law/clear precedent.

The FMLA "creates a series of prescriptive substantive rights for eligible employees." *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) Under the FMLA, an "[e]ligible employee[] 'shall be entitled to a total of twelve workweeks of leave during any twelve-month period' if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Id.* (quoting 29 U.S.C. § 2612(a)(1)(D)). "The primary purposes of the FMLA are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'"

---

[3] Although the cited case was decided under the Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12, commonly known as Act 111, relating to collective bargaining by police and firefighters, we find it analogous and persuasive on this issue.

7

*Id.* (quoting 29 U.S.C. § 2601(b)(1) & (2)).  The FMLA endeavors to accomplish these purposes "in a manner that accommodates the legitimate interests of employers."  29 U.S.C. § 2601(b)(3).

Regarding the effect of collective bargaining on FMLA rights, the United States Court of Appeals for the Third Circuit has explained:  "The FMLA provides that 'the rights established for employees under this Act . . . shall not be **diminished** by any collective bargaining agreement[] or any employment benefit program or plan.'"  *Callison*, 430 F.3d at 121 (emphasis added) (quoting 29 U.S.C. § 2652(b); additional citations omitted).  Relatedly, the Third Circuit has observed that "any collective bargaining agreements are only invalidated to the extent they **diminish** the rights created by the FMLA."  *Id.* (emphasis added).  Notably, Sections 2652(b) and 2653 of the FMLA expressly provide that "[n]othing in th[e FMLA] . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under th[e FMLA] . . ." or "to diminish the obligation of an employer to comply with any [CBA] or any employment benefit program or plan that provides greater . . . rights to employees than the rights established under th[e FMLA] . . . ."  29 U.S.C. §§ 2652(b) & 2653; *see also* 29 C.F.R. § 825.700(a) & (b).

Federal and state judicial and administrative decisions from various jurisdictions have held that the FMLA does not preclude an employee's affirmative election to refuse available FMLA leave.  *See, e.g.*, *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 & 1247 (9th Cir. 2014) (concluding that "nothing in the FMLA precludes an employee from deferring the exercise of his or her FMLA rights," that "an employee can affirmatively decline to use FMLA leave, even if the underlying reason for seeking the leave would have invoked FMLA protection," and

8

that "the preservation of future FMLA leave is a compelling reason why an employee might wish to do so"); *Salem Cmty. Coll. & Salem Cmty. Coll. Fac. Ass'n*, 38 N.J. Pub. Emp. Rep. 42 (N.J. Pub. Emp. Rels. Comm'n 2011) (concluding that the FMLA does not require an employer to force an employee to take FMLA leave if the employee declines it); *accord Gravel v. Costco Wholesale Grp.*, 230 F. Supp. 3d 430, 436 (E.D. Pa. 2017) (holding that an employer could not be liable for failing to grant FMLA leave that was expressly declined by the employee); *Amstutz v. Liberty Ctr. Bd. of Educ.*, 127 F. Supp. 3d 846, 854 (N.D. Ohio 2015) (same). However, these decisions are not from Pennsylvania and are not binding on this Court.

In contrast to this line of judicial decisions, the United States Department of Labor (DOL) has suggested in forms and opinion letters that once an employee requests leave for an FMLA-eligible reason, the employer *must* designate *and count* it as FMLA leave, and the employee cannot decline to use FMLA leave by using paid leave instead, in order to save FMLA leave for later use. *See* DOL Form WH-382;[4] DOL Wage & Hour Div. (WHD) Op. Letter FMLA2019-1-A at 2;[5] WHD Op. Letter FMLA2019-3-A at 3.[6] In an unreported decision, a divided panel of this Court followed the DOL/WHD position. *See Towamencin Twp. v. Pa. Lab. Rels. Bd.* (Pa. Cmwlth., No. 789 C.D. 2020, filed Oct. 7, 2022). However, unreported decisions of this Court are not binding authority, although they may be

---

[4] "Designation Notice under the Family and Medical Leave Act," available at www.dol.gov/sites/dolgov/files/WHD/legacy/files/WH-382.pdf (last visited July 15, 2026).

[5] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2019_03_14_1A_FMLA.pdf (last visited July 15, 2026).

[6] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2019_09_10_3A_FMLA.pdf (last visited July 15, 2026).

cited for their persuasive value pursuant to Section 414(a) of this Court's Internal Operating Procedures if issued after January 15, 2008. 210 Pa. Code § 69.414(a).

As explained above, *North Star* and *Beaver County* suggest that an arbitrator is free to interpret a statute in conjunction with its effect on the terms of a CBA. Although *Greater Johnstown Area Vocational-Technical*, *City of Pittsburgh*, and *Greater Johnstown School District* suggest that the arbitrator's interpretation must conform to well established case law/clear precedent, we conclude that neither the judicial decisions from other jurisdictions cited above nor the DOL forms or opinion letters followed in this Court's unreported decision in *Towamencin* created binding authority so as to constitute "well established case law" or "clear precedent" as those terms are applied in *Greater Johnstown Area Vocational-Technical*, *City of Pittsburgh*, and *Greater Johnstown School District* regarding an arbitrator's statutory analysis. Therefore, the arbitrator did not exceed his authority in his construction of the FMLA, and accordingly, judicial review of the arbitrator's award is limited to the application of the essence test. We further conclude that the arbitrator's determination that the School District violated the CBA by denying the employee the ability to choose whether or not to use FMLA leave time drew its essence from the CBA. Consequently, Common Pleas erred by vacating the arbitration award.

10

## IV. Conclusion

Based on the foregoing discussion, Common Pleas' order vacating the arbitration award is reversed, and the arbitration award is reinstated.

_____
CHRISTINE FIZZANO CANNON, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Freeport Area School District :
:
        v. :
:
Freeport Education Association, :
PSEA/NEA, : No. 1594 C.D. 2025
        Appellant :

**O R D E R**

AND NOW, this 16th day of July, 2026, the November 4, 2025 order of the Court of Common Pleas of Butler County is REVERSED, and the arbitration award in favor of Freeport Education Association, PSEA/NEA and against Freeport Area School District is REINSTATED.

_____
CHRISTINE FIZZANO CANNON, Judge